**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CORINE HOUNMENOU,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:26-cv-3249-MDH** |
| | ) | |
| **SHERIFF JIM C. ARNOTT,** *et. al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and her Order of Supervision has been terminated without prior written notice. Petitioner argues federal statutes and the Due Process Clause require she be released or granted a hearing. The Court agrees with Petitioner's arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

Petitioner Corine Hounmenou[1] has lived in this country for over two decades. Her close-knit family lives in this country, including their two children. Corine has a job taking care of the elderly. She has never had any issues with the law. The family is beloved by their community and are devoted Catholics.

In 2004, Corine who was born on July 9, 1972, in Senegal came to the US on a valid visitor visa. Once here, she filed for asylum. The case was unfortunately denied, and so were all appeals. On June 9, 2011, the BIA dismissed the direct appeal of the asylum application. However, she

---

[1] Petitioners are married and have filed jointly filed this habeas petition. Inherently, habeas is an individualized remedy and each detainee's custody must be evaluated separately. Further, 28 U.S.C. § 2242 requires each petitioner to sign their own petition. Although no party has raised the issue of misjoinder, the Court may address it on its own initiative. Fed. R. Civ. P. 21. Because habeas petitions must be individually filed and signed, and because the petitioners' claims cannot be jointly litigated, each petitioner shall proceed in a separate civil action, and the Clerk is directed to open a new case for each petitioner and file a copy of the petition and all pleadings in each case.

1

appealed the case to the Eighth Circuit Court of Appeals. (*Hounmenou, et al v. Eric H. Holder, Jr*, 11-1990 (8th Cir. May 5, 2011). Starting on March 4, 2013, she was placed on an order of supervision ("OSUP"). For the next thirteen years, she, without fail, complied with every request from Immigration and Customs ("ICE"). (See Doc. 1-3; OSUP compliance for Petitioners). On January 15, 2026, Petitioner appeared with her husband for their regular check in and the check in went as normal. They were told however, that they needed to return on April 14, 2026. Again, the couple complied.

Suddenly, without notice, without reasoning, and without an opportunity to be heard, she was detained (as well as her husband). Their attorney, who was with them, sought information about the basis for the detention and revocation of the OSUP for each spouse, and was provided only with a cursory reason without more. No other process was provided. (See Doc. 1-4; Declaration of Hannah Sullivan). After repeatedly asking for documents that may have been given to Petitioner, on April 25, 2026, at 5:43pm, Ms. Sullivan was finally provided by Deportation Officer Andy Dunno, the Form I-205 and I-294 for Petitioner. (See Doc. 1-6, Form I-205/I-294). The documents attest to witnessing Petitioner's "departure" from the US; a factual impossibility since she is detained in Greene County Jail currently. At no point were copies of the denial provided to Ms. Sullivan or the Petitioner. She also was not given an informal interview or any Notice of Revocation of the OSUP.

Petitioner has never left the United States since the order of removal was issued against her. She has remained on an order of supervision since March 4, 2013, and has not been convicted of any crimes.

**DISCUSSION**

2

## I. **Jurisdiction**

Respondents argue that two statutory provisions—8 U.S.C. §§ 1252(b)(9) and (g) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)); *Cifuentes Rivera v. Arnott, et al*, 25-cv-00570-RK1, Doc.19 at 7 (W.D. Mo. Oct. 07, 2025) ("the narrow scope of § 1252(g) does not cover "claims [that] are collateral to the Government's decision to execute the final order of removal," for instance, claims seeking relief based upon the Government's alleged failure to comply with its own regulations regarding the required administrative processes after an alien is detained."). Petitioners are challenging their unlawful detention, not any removal decisions or actions, so the above provisions do not deprive the Court of jurisdiction.

## II. **The Due Process Clause**

8 C.F.R. § 241.4(l)(2) governs discretionary revocations because there is no claim, and there has never been any claim, that Petitioner violated any condition of their OSUP. Subsection (l)(2) grants the Executive Associate Commissioner and the District Director authority to revoke and return a noncitizen to custody, but it does not limit process only "upon revocation." In other words, it defaults to constitutional notions of due process which do not authorize detain-first, process-later.

The Due Process clause applies to all persons in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests, as defined by the Due Process Clause of the Fifth Amendment. See *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); see also *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972). Petitioner's order of supervision and stay of removal creates legitimate liberty and property interests.

This case presents a serious chronological defect. This is not a technical irregularity, it is a constitutional one. The Due Process Clause prohibits the government from imprisoning a person and then, after the fact, completing the documentation purporting to authorize that imprisonment. The liberty interest that attaches to her thirteen years of lawful supervised compliance cannot be extinguished by a document signed after they were already in custody. That sequence is also contrary to the plain language of the applicable regulation which contains no authorization to detain first and complete the required process afterward.

Petitioner's order of supervision and stay of removal create legitimate liberty and property interests. Although the regulatory framework suggests that stays and orders of supervision may be rescinded at the discretion of the government, both create vested liberty and property rights for Petitioner.

4

By failing to provide written notice of revocation of the OSUP and a hearing to justify the basis for re-detention or explain why Petitioner has violated the conditions of release, Respondents have violated Petitioner's constitutional right to due process.

Petitioner shall be immediately released. Release is the customary remedy in habeas proceedings. *See* 28 U.S.C. § 2243 (the habeas shall "dispose of the matter as law and justice require."); *Preiser v. Rodriguez,* 411 U.S. 475,484 (1973) (finding "that the traditional function of the writ is to secure release from illegal custody"). Additionally, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following *Matter of Yajure Hurtado,* 29 I&N Dec. 216, 220 (BIA 2025), and would be futile.

## CONCLUSION

The Court concludes Petitioner's right to procedural due process has been violated, and they are entitled to immediate release. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody.

2. Respondents shall make accommodations available for Petitioners until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondents.

4.  Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

5

**IT IS SO ORDERED**.

DATED: May 8, 2026

<u>/s/ Douglas Harpool</u>
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

6